```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

PENNY R. MOUNGER,                  )
                                   )
            Plaintiff,             )
                                   )
v.                                 )  Case No. CIV-13-386-RAW-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Penny R. Mounger (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 18, 1975 and was 36 years old at the time of the ALJ's decision. Claimant completed her high school education through the eleventh grade. Claimant has worked in the past as a motel housekeeper. Claimant alleges an inability to work beginning January 1, 2003 due to limitations resulting from depression, possible bipolar disorder, and arthritis.

**Procedural History**

On February 19, 2010, Claimant protectively filed for supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge John W. Belcher ("ALJ") on May 8, 2012 in Tulsa, Oklahoma. The ALJ issued an unfavorable decision on June 15, 2012. On June 27, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an erroneous RFC determination which did not consider the limitations of all of Claimant's impairments; (2) failing to indicate the relative weight given to the opinions of the consultative

examiners; (3) failing to give appropriate weight to the opinions of Claimant's treating physicians; and (4) failing to provide an appropriate mental RFC which accounts for all of Claimant's mental limitations.

**RFC Evaluation**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, affective mood disorder, and axiety-related disorder. (Tr. 20). He concluded that Claimant retained the RFC to perform her past relevant work as a motel housekeeper. (Tr. 31). In so doing, the ALJ found Claimant retained the RFC to perform medium work in that she could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, push and/or pull consistent with these limitations, stand/walk for 6 hours in an 8 hour workday, sit for 6-8 hours in an 8 hour workday. Claimant was found to be able to perform simple tasks in a habituated and object oriented work setting with superficial contact with co-workers and supervisors and no contact with the general public. The ALJ also found Claimant could not work in close proximity to co-workers. (Tr. 22). After consultation with a vocational expert, in addition to her past relevant work, the ALJ found Claimant could perform the representative jobs of kitchen worker, hand packager, and warehouse worker, all of which exist in

sufficient numbers in both the national and regional economies according to the expert. (Tr. 31-32). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 32).

Claimant first contends that ALJ failed to adequately consider the totality of the limitations caused by her impairments in his RFC determination. On November 17, 2011, Claimant was evaluated by the consultative examiner, Dr. John W. Hickman. Claimant reported that she had trouble keeping her past housekeeping jobs for more than 3 to 6 months because her attitude gets her into conflict with her employers and she either quits when she is mistreated or gets fired for arguing with her employers. (Tr. 663).

Dr. Hickman administered the Wechsler Adult Intelligence Scale - III and found Claimant scored a verbal IQ of 73 and a full scale IQ of 78 in the borderline range. (Tr. 665). Claimant had low average dexterity in her right hand. She also tested low average in auditory attention span. She had severe difficulty maintaining her concentration while differentiating similar sounding speech. (Tr. 666). Claimant was found to possess borderline auditory math skills, second grade word recognition skills, fourth grade spelling skills, and fifth grade written math skills. (Tr. 667). Dr. Hickman found Claimant scored a 48 on the Beck Depression Inventory which indicated severe depression and a score of 22 on the Beck

6

Anxiety Inventory which indicated moderate anxiety. (Tr. 668). Claimant's TOMM score was 44 which indicated a low probability of malingering or insufficient effort. Id.

Dr. Hickman concluded that Claimant was functioning in the borderline range of mental ability for language functions and in the low average range for performance functions. She made errors in mental math secondary to her severe difficulty with sustained concentration. Id. Dr. Hickman diagnosed Claimant with bipolar disorder, mixed type, ADHD, anxiety disorder with panic attacks, with a GAF of 55 noting marked difficulties with anxiety, mood control, and sustaining concentration. (Tr. 668-69).

Dr. Hickman stated that he would not expect Claimant's functioning to change in the near future and considered her long term prognosis as guarded because of her psychiatric disorders and joint pain. He did not believe Claimant met any SSI disability criteria at the present time but may equal a combined 12.04 3 listing on the combined effects of her mental and medical difficulties. (Tr. 669).

Dr. Hickman also completed a Medical Source Statement on Claimant. He found Claimant to have marked limitation in the areas of the ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain

7

attention and concentration for extended periods, and the ability to work in coordination with or proximity to others without being distracted by them. (Tr. 670-71). He found moderate limitations in an additional seven functional areas. (Tr. 670-72).

The ALJ rejected Dr. Hickman's conclusions, finding "it appears he apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported." He also generically stated that Dr. Hickman's opinion "is not supported by the evidence of record." (Tr. 30). These statements do not consider the objective testing performed by Dr. Hickman and the recognized testing which indicated Claimant was not malingering or underperforming on the tests. Moreover, the ALJ does not specifically assign weight to Dr. Hickman's opinion nor that of the other medical professionals offering opinions on Claimant's functionality - although it is clear he does not agree with Dr. Hickman's and Dr. Speer's opinions on the level of Claimant's functioning.

The ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must also explain in the decision the weight given to the medical opinions. Soc. Sec. R. 96-6p, 1996 WL 374180. An ALJ "is not

entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). In this instance, the ALJ did not state the weight given to Dr. Hickman's opinion, if any, and his bases for rejecting those portions of the medical opinion proffered by Dr. Hickman is not supported since the functional findings were largely based upon objective testing rather than subjective information provided by Claimant. On remand, the ALJ shall specifically set forth the medical evidence which contradicts Dr. Hickman's functional findings and the weight afforded his opinion and those of the other medical professionals. Upon doing so, the ALJ shall re-evaluate his RFC findings on mental limitations and modify them accordingly.

### Treating Physicians' Opinions

Claimant contends the ALJ improperly rejected the opinions of her treating physicians without providing an adequate basis for doing so. On November 15, 2011, a Medical Opinion statement was provided by Dr. Glenn Vogelsang. Among his findings, Dr. Vogelsang estimated Claimant would be absent from work three or more days per month, noting she suffered from bipolar affective disorder, low motivation, and low energy. (Tr. 680). Dr. Vogelsang also found Claimant could not respond appropriately to supervision in a

9

routine work setting, could not respond appropriately to co-workers in a routine work setting, could not deal with changes in a routine work setting, could not maintain concentration and attention for extended periods of time in a routine work setting, could not handle normal work stress in a routine work setting, would require Claimant to take unscheduled breaks during an 8 hour workday, and could not be expected to attend any employment on a sustained basis. He also found Claimant was not abusing drugs or alcohol and Claimant could not manage her own monetary benefits. (Tr. 681).

On December 6, 2011, Dr. Joe Speer completed a Mental Residual Functional Capacity Questionnaire on Claimant. He stated that he saw Claimant every three to four months while his counselor saw her on a weekly basis. He identified a number of functional areas which would be affected by Claimant's condition. Specifically, Dr. Speer found Claimant had "no useful ability to function" in the area of completing a normal workday and workweek without interruptions from psychologically based symptoms. He also found Claimant was "unable to meet competitive standards" in the areas of maintaining attention for two hour segments, working in coordination with or proximity to others without being unduly distracted, performing at a consistent pace wihtout an unreasonable number and length of rest periods, accepting instructions and

10

responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with stress of semi-skilled and skilled work. (Tr. 683-86).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

11

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ clearly rejected the opinions of these treating physicians, he did not explain the basis for doing so except for reciting the oft used statement that the opinions was not supported by the medical evidence. On remand, the ALJ shall re-evaluate this

opinion evidence which appears largely consistent in their findings together with the findings of Dr. Hickman and provide the specific basis for rejecting the opinions in light of the Watkins factors.

**Mental RFC Evaluation**

Claimant contends the ALJ did not include all of her mental limitations in his RFC assessment. Given the deficiencies in the ALJ's decision regarding the evaluation of the various physicians' opinions, the ALJ shall re-evaluate his RFC findings related to Claimant's mental impairments on remand.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 17th day of February, 2015.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE